**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DALE GENO,

        Petitioner,        Case Number: 2:08-CV-11744

v.        HON. ARTHUR J. TARNOW

LINDA METRISH,

        Respondent.
_____/

## OPINION AND ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Dale Geno has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for first-degree criminal sexual conduct. Respondent has filed a Motion for Summary Judgment on the ground that the petition was not timely filed. Petitioner filed a response.

**I.**

Following a bench trial in Muskegon County Circuit Court, Petitioner was convicted of first-degree criminal sexual conduct, in connection with the assault of a two-year old girl, Sadie Ramsey. Petitioner had been dating Sadie Ramsey's mother at the time the charges were instituted. On May 20, 2002, Petitioner was sentenced to 30 to 90 years' imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

    I.    The trial court should have suppressed appellant's written statement where the police failed to make an audio or video recording of their interrogation.

> II. The trial court violated appellant's due process rights by failing to suppress appellant's coerced statement to the police.
>
> III. The trial court violated appellant's due process right to confront and cross-examine witnesses by allowing the prosecutor to introduce the non-testifying child complainant's unreliable hearsay statement.
>
> IV. The trial court violated appellant's due process rights when it departed above the statutory sentencing guideline range in part based on appellant's alleged future dangerousness, which is not an objectively verifiable reason.

The Michigan Court of Appeals affirmed his conviction. *People v. Geno*, No. 241768 (Mich. Ct. App. Apr. 27, 2004).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. The Michigan Supreme Court denied leave to appeal. *People v. Geno*, No. 126373 (Mich. Nov. 22, 2004).

On May 19, 2005, Petitioner filed a motion for relief from judgment in the trial court, raising claims of ineffective assistance of trial and appellate counsel. The trial court denied the motion. *People v. Geno*, No. 01-46631 (Muskegon County Circuit Court May 26, 2005). Petitioner filed applications for leave to appeal the trial court's decision in the Michigan Court of Appeals and Michigan Supreme Court. Both Michigan appellate courts denied leave to appeal. *People v. Geno*, No. 265493 (Mich. Ct. App. Apr. 11, 2006); *People v. Geno*, No. 131137 (Mich. Nov. 9, 2006).

On March 28, 2007, Petitioner filed another motion for relief from judgment in the trial court. The trial court denied the motion because it was an impermissible successive motion and did not present new evidence warranting an exception to the ban on successive motions. *People v. Geno*, No. 01-046631-FC (Muskegon County Circuit Court March 30, 2007).

Petitioner sought leave to appeal the trial court's denial in the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal because Michigan court rules state that a defendant cannot appeal the denial or rejection of a successive motion for relief from judgment. *People v. Geno*, No. 278886 (Mich. Ct. App. July 20, 2007); *People v. Geno*, No. 134784 (Mich. Nov. 29, 2007).

## II.

Respondent argues that the petition should be dismissed because it was not timely filed. The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA" or "the Act") applies to all habeas petitions filed after the effective date of the Act, April 24, 1996, and imposes a one-year limitations period on habeas corpus petitions.

A prisoner must file a federal habeas corpus petition within one year of the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. (d)(1)(A). The one-year limitations period does not begin to run until the time for filing a petition for a writ of certiorari to the United States Supreme Court has expired. *Isham v. Randle*, 226 F.3d 69, 694-95 (6th Cir. 2000). In addition, the time during which a prisoner seeks state-court collateral review of a conviction does not count toward the limitations period. 28 U.S.C. § 2244(d)(2). However, a properly filed application for state post-conviction relief, while tolling the statute of limitations, does not serve to restart the limitations period. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).

In this case, Petitioner's time for filing a petition for a writ of certiorari in the United States Supreme Court began to run on November 23, 2004, the day after the Michigan Supreme Court denied leave to appeal his conviction. *Bronaugh v. Ohio*, 235 F.3d 280, 284-85 (6th Cir.

2000) (citing Supreme Court Rule 30 which states that in calculating the ninety-day window for filing a petition for writ of certiorari, "the day of the act, event, or default from which the designated period begins to run is not included"). The ninety-day period during which Petitioner could petition for a writ of certiorari concluded on February 20, 2005. The last day on which a petitioner can file a petition for a writ of certiorari in the United States Supreme Court is not counted toward the one-year limitations period applicable to habeas corpus petitions. *Id.* at 285. Accordingly, the limitations period commenced on February 21, 2005. Petitioner filed a motion for relief from judgment in the trial court on May 19, 2005. That motion, a properly filed motion for collateral review, tolled the limitations period, after 88 days had elapsed.

The trial court denied Petitioner's motion for relief from judgment. Petitioner appealed the denial to the Michigan Court of Appeals and Michigan Supreme Court. The Michigan Court of Appeals denied leave to appeal on April 11, 2006. *People v. Geno*, No. 265493 (Mich. Ct. App. Apr. 11, 2006). The Michigan Supreme Court denied leave to appeal on November 9, 2006. *People v. Geno*, No. 131137 (Mich. Nov. 9, 2006). The limitations period resumed running on November 10, 2006. The limitations period continued to run, uninterrupted, until it expired on August 13, 2007.

Petitioner argues that the filing of a second motion for relief from judgment on March 28, 2007, served to toll the limitations period. This motion, however, was not properly filed for purposes of 28 U.S.C. § 2244(d)(2) because the state court deemed it a successive, impermissible motion for relief from judgment. Under Michigan Court Rule 6.502(G), unless there has been a retroactive change in the law or newly discovered evidence that was not discoverable before the filing of the first motion, "one and only one motion for relief from judgment may be filed with

regard to a conviction." Mich. Ct. R. 6.502(G). If a state application is not properly filed, it does not toll the limitations period. *Artuz v. Bennett*, 531 U.S. 4, 9 (2000). The Michigan courts held that Petitioner's motion for relief from judgment did not satisfy the standard for the "newly discovered evidence" exception to the ban on successive motions. Therefore, under state law, the motion was not properly filed and, therefore, did not toll the limitations period. *Accord Smith v. Berghuis*, No. 07-14140, 2008 WL 2357696, *2 (E.D. Mich. June 09, 2008); *Raines v. Berghuis*, No. 07-10605, 2008 WL 2157049 (E.D. Mich. May 22, 2008); *King v. McKee*, No. 06-911, 2007 WL 3461165, *5 (W.D. Mich. Nov. 15, 2007) .

Petitioner also argues that the newly-discovered evidence he attempted to present in his successive motion for relief from judgment establishes his actual innocence and should, therefore, toll the limitations period.

"Because AEDPA's one-year statute of limitations is not jurisdictional, a petitioner who misses the deadline may still maintain a viable habeas action if the court decides that equitable tolling is appropriate." *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004), citing *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001). Actual innocence can be a basis for equitable tolling when a petitioner "can present new evidence which undermines this court's confidence in the outcome of the trial." *Souter v. Jones*, 395 F.3d 577, 600 (6th Cir.2005). "Where an otherwise time-barred habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying constitutional claims." *Id.* at 602. "[T]he threshold inquiry is whether 'new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial.'"

*Id.* at 590, *quoting Schlup v. Delo*, 513 U.S. 298, 317 (1995). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Id.*, at 324.

The evidence Petitioner claims supports a finding of actual innocence is an affidavit executed by his father, Theodore Geno. In the affidavit, Geno states that, in December 2005, his son informed him that, Leslie Swartout, an inmate at the Muskegon County Jail, might have information useful to Petitioner's case. On January 12, 2006, the elder Geno visited Swartout at jail. Swartout informed him that he knew the victim's father, John Ramsey. Ramsey informed Swartout that Petitioner was dating his estranged wife and that he had a way of getting Petitioner out of the way so that he could get his wife back. According to the elder Geno, Swartout indicated a willingness to testify as to what Ramsey had told him.

Petitioner was tried for the sexual assault of two-year old Sadie Ramsey. Her father, John Ramsey, testified that he and Sadie's mother were in the midst of divorce proceedings in August 2001. On August 17, 2001, he picked Sadie up from her mother's house, where she had been staying with her mother and Petitioner. When he changed her diaper, she was uncharacteristically uncooperative and he notice that her vaginal area was red and irritated. He was placed in contact with child protective services. On August 30, 2001, Darcy Komejan, the executive director of Child Assessment Center, in Holland, Michigan, interviewed Sadie.

Komejan testified that, during the course of the interview, Sadie indicated she needed to use the restroom and asked for Komejan's assistance. Komejan assisted Sadie in removing her

6

diaper. When she did so, she noticed blood on the diaper. Sadie told Komejan that Petitioner hurt her there.

Muskegon police detective Emilio Trejo testified that he interviewed Petitioner twice. During the first interview, Petitioner, after first denying that he ever changed Sadie's diaper, admitted that he did so on occasion. He also admitted that he may have accidentally hurt her while changing her diaper. In a later interview, Petitioner admitted that, while changing Sadie's diaper, his finger may have accidentally penetrated her vagina. Detective Trejo also observed an interview with Petitioner conducted by Michigan State Police sergeant Lane. During that interview, Petitioner admitted having sexual fantasies about Sadie and that, while watching a movie with Sadie seated on his lap, he had a "semi-erection."

Petitioner gave a written statement to police in which he admitted to accidentally inserting his finger in Sadie's vagina while changing her.

At trial, Ramsey was questioned at length about his possible motives for identifying Petitioner as the person who injured his daughter. Ramsey admitted that he did not initially want a divorce from his wife and that he was not pleased with her relationship with Petitioner.

Given the foregoing trial testimony, the affidavit from Petitioner's father regarding what information Leslie Swartout might have about Sadie's father's motives is insufficient to undermine the Court's confidence in the verdict. Petitioner fails to provide an affidavit from Swartout himself, and, Sadie's father's motives for testifying were explored during trial. The trial court judge had the opportunity to consider whether Ramsey's unhappiness with the divorce and with his estranged wife's relationship with Petitioner led to these charges being filed.

The elder Geno's affidavit regarding Swartout's testimony does not undermine the Court's confidence in the outcome of the trial. Therefore, the Court concludes that equitable tolling of the limitations period is not warranted in this case. Accordingly, Petitioner's application for a writ of habeas corpus is barred by the one-year statute of limitations.

### III.

For the foregoing reasons, the Court concludes that the habeas corpus petition was filed outside the one-year limitations period prescribed in 28 U.S.C. § 2244 (d)(1)(A). Further, the Court concludes that Petitioner has failed to establish that he is entitled to equitable tolling of the limitations period.

Accordingly, **IT IS ORDERED** that the Respondent's Motion for Summary Judgment is **GRANTED** and the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 2244(d)(1)(A).


S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated: February 27, 2009


I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on February 27, 2009, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary